## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**PERRY KEITH CONERLY and**
**VIVIAN CONERLY**                                                        **PLAINTIFFS**

**v.**                                          **CIVIL ACTION NO. 2:24-cv-118-LG-MTP**

**HOBBY LOBBY STORES, INC.**
**and JOHN DOES 1-10**                                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING [69] MOTION TO EXCLUDE OR LIMIT TESTIMONY OF JAIME JIMÉNEZ

This cause comes before the Court on Defendant's Motion to Exclude or Limit Testimony of Jaime Jiménez [69]. The motion is now fully briefed. Having considered the parties' briefs, the governing standard, and applicable legal authorities, the Court denies the motion for the reasons set forth below.

### BACKGROUND

This case arises from a trip and fall Plaintiff, Vivian Conerly ("Ms. Conerly"), experienced on June 27, 2022 in the Hobby Lobby store in Hattiesburg, Mississippi. As she entered the store's vestibule and rounded a display table, her shin struck a metal cart, and she fell face first onto the store's concrete floor. Store surveillance video captured the fall from a few different angles. *See* Video Excerpt (filed conventionally) [73]. Ms. Conerly testified that her face hit the concrete and when she came to, her face was all wet, which caused her to think her face was bleeding, "but it was like the tears, and I was crying." *See* Conerly Dep. [72-5] at 20:12-16; 38:7-21. She further testified that she asked for an ice pack because she could feel

her face swelling. *Id.* at 38:19-22; 39:6-8. She told the girl sitting with her, "Something's wrong with my eye." *Id.* at 39:10-13. When she had raised her head to see where her belongings went, she tilted her head up and saw a black ring appear in her eye, and she told the girl, "I can't see. Something's happening to my eye." *Id.* at 39:19-40:9.

The following day, on June 28, 2022, Ms. Conerly was examined by Dr. Kiper Nelson, M.D. at Southern Eye Center, who has been her regular ophthalmologist for about five years. *See* Med. Recs. [72-1]; [72-5] at 52:21-53:6; 60:4-11. She explained what happened at Hobby Lobby. [72-5] 53:7-10. Dr. Nelson ordered an optical coherence tomography ("OCT"),[1] which showed mild macular edema. [72-1] at 163-166; Jiménez Aug. Dep. [72-3] 25:11-22; Jiménez Rep't [69-1] at 13. Dr. Nelson referred Ms. Conerly to Dr. Jaime Jiménez, Southern Eye Center's retinal doctor/intraocular eye doctor.[2] [72-5] at 53:11-14.

Dr. Jiménez evaluated Ms. Conerly on July 8, 2022.   She told him about the fall and her eye symptoms. [72-5] 74: 1-10; 75:1-7. Dr. Jiménez reviewed the OCT from Dr. Nelson, noted her swelling "had gotten a little bit worse" since then, and diagnosed her with tributary branch retinal vein occlusion ("BRVO").[3] [72-3] 26:1-5; [72-1] at 157. He confirmed the diagnosis with a fluorescein angiogram. [72-3] 41: 8-

---

[1] Dr. Jiménez explained that it is "like a sonogram of the retina, instead of using sound, you're using light." Jiménez Dec. Dep. [72-4] 19:13-17.

[2] In his report, Dr. Jiménez states that he specializes in vitreoretinal surgery and retinal vascular disease. *See* Rep't [69-1] at 1.

[3] Dr. Jiménez explained that a tributary BRVO is when a small "twig" is occluded or "clogged," which is less common than a general BRVO that are the "bigger branches." [72-3] 41:14-24; 57:17-20.

24; [72-1] at 161-162. Ms. Conerly had no prior record of macular pathology. [69-1] at 13. Since July 2022, Dr. Jiménez has seen Ms. Conerly an additional 22 times. [69-1] at 13. She has received several retinal injections in her left eye over the years to treat the BRVO. *See* generally [72-1].

Plaintiffs designated Dr. Jiménez as an expert and produced his report on May 2, 2025. Exp. Discl. and Rep't [69-1]. Dr. Jiménez is expected to testify that Ms. Conerly's fall at Hobby Lobby caused the BRVO in her left eye and that she will require retinal injections as future treatment for this condition. Def. Memo. [68] at 1. Hobby Lobby deposed Dr. Jiménez twice and now seeks to exclude his causation opinion on the grounds that it is unreliable because his opinion is based on facts he did not ask, examine, or otherwise determine from his treatment of Ms. Conerly. *Id.* Hobby Lobby also seeks to exclude Dr. Jiménez's opinion regarding future treatment on the grounds that it is speculative. *Id.*

## DISCUSSION

### I.    LEGAL STANDARD

The motion before the Court challenges the admissibility of expert testimony and opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993). The admissibility of expert testimony is governed by Rule 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has explained that this rule places the district court into a gatekeeping role to ensure that scientific evidence is both reliable and relevant. *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 597, 113 S. Ct. 2786). This role requires the district judge to undertake a two-part analysis. *Id.* The district judge must first determine whether the proffered testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid; and second, the district judge must determine whether that reasoning or methodology can be properly applied to the facts in issue; that is, whether it is relevant. *Id.* (citing *Daubert*, 509 U.S. at 592-93). The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.").

## II.    ANALYSIS

### A. Causation Opinion

Hobby Lobby seeks to exclude Dr. Jiménez's causation opinion arguing that it

is unreliable because the opinion is a speculative theory not based on sufficient facts and data. [68] at 7. To be clear, Dr. Jiménez's overall opinion is that "the fall sustained by Mrs. Conerly, resulting in trauma and an increase in blood pressure,[4] was the cause of the branch retinal vein occlusion in her left eye." [69-1] at 4. It is a portion of that opinion that Hobby Lobby takes issue with, and it seems the issue arose from Hobby Lobby's questions about the "physiological" cause of the tributary BRVO.

When Hobby Lobby deposed Dr. Jiménez in August 2025, counsel asked, "Do you have an opinion on the physiological cause of the occlusion in Ms. Conerly?" [72-3] 76:10-14. It was in answer to this question, that Dr. Jiménez stated he had a "theory." *Id.* 76:15. Counsel then tried to clarify with this exchange:

Q: Yeah. And when I say—and I do—
I want to be clear. When I say the "physiological
cause," in other words—and because I'm going
to ask you another question next about—

A: The pathophysiology.

Q: — the — yeah. I'm going to ask you
about what the external cause was.
But, yeah, the physiological cause, what
happened in her body that you believe led to
this occlusion?

---

[4] At two points in its [68] Memorandum, Hobby Lobby points out that Dr. Jiménez's opinion changed from an increase in *blood* pressure (stated in his report) to an increase in *intraluminal* pressure (stated at his deposition). *See* [68] at 2, 4. While this appears to be the case, the Court need not address this issue in depth because the change itself is not a basis for Hobby Lobby's [69] Motion. Dr. Jiménez did clearly state in his August 2025 deposition, however, that he believed there was an increase in intraluminal pressure. [72-3] 100:9-101:19. And it was this opinion that Hobby Lobby immediately verified at the beginning of the December 2025 deposition. [72-4] 5:24-6:13.

[72-3] 76:16-25.

Then, in answer to this question, Dr. Jiménez testified:

A:  So I — I — later after the fact,
    I had an opportunity to review the —the
    accident, a video of—

Q:  Sure.

A:  —the accident.  And what I did
    notice is that she had a very fast fall —

Q:  Okay.

A:  — deceleration, and she really didn't
    have enough time to protect herself, her abdomen
    and stuff like that –

Q:  Okay.

A:  —so—so she had a sudden
    compression of thoracic and abdomen at the time
    when she fell.

Q:  Okay.

A:  Not to mention the trauma directly to the eye.

Q:  Right.

A:  So when you have major branch vein
    occlusions, those are the ones that are usually
    related to uncontrolled blood pressure and stuff
    like that —

Q:  Okay.

A:  — so in — this case, what I think
    happened is she had a — sudden like a
    Valsalva kind of maneuver[5]  that elevated the

---

[5] A Valsalva maneuver is when one tries to exhale or release air through a closed
airway. [72-3] 101:11-13.

> pressure, you know, all over the system, and
> then it—it just burst there.
>
> Q:   Okay.
>
> A:   That's — that's what I think happened
>       there, and — and that's why such a small area,
>       not — not one of the big branches.

[72-3] 77:3-78:9.

At the December 2025 deposition, Hobby Lobby questioned Dr. Jiménez further about the BRVO's physiological cause. [72-4] 6:5-11:8. Based on this further testimony, Hobby Lobby asserts that Dr. Jiménez's opinion is unreliable because Dr. Jiménez admitted that he does not know whether Conerly performed a Valsalva maneuver and instead relies on the assumption that she did because he personally holds his breath when he falls. [68] at 7-8 (citing [72-4] 8:6-10). Hobby Lobby also complains that, when asked about the force involved in the fall, Dr. Jiménez admitted that he did not ask Ms. Conerly about the forces involved, how she felt, or what she experienced. *Id.* Nor did he have any idea what sort of force would even be required to cause an occlusion. [68] at 8 (citing [72-4] 8:10-11). Hobby Lobby claims that even though Dr. Jiménez may have sufficient facts to opine that Conerly has a BRVO, he does not have sufficient information to bridge the gap of causation between the BRVO and the fall because he has no facts, clinical history, examination, or any other objective evidence upon which to base his assumptions on what happened during the fall. [68] at 8. The Court disagrees.

"An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. And "as a

general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned [to] that opinion rather than its *admissibility* and should be left for the jury's consideration." *Primrose Operating Co.* v. *Nat'l Am. Ins.*, 382 F.3d 546, 562 (5th Cir. 2004) (emphasis in original). The Court finds Dr. Jiménez's overall opinion is adequately reliable to present to the jury because it is based on sufficient facts and data.

Having reviewed the record evidence, the Court finds that Dr. Jiménez's opinion that the fall caused Ms. Conerly's tributary BRVO is not based on assumptions or *ipse dixit*. Instead, Dr. Jiménez reviewed Ms. Conerly's history; he examined the OCT from Dr. Nelson that was taken the day after the fall that showed mild macular edema, of which she had no prior history; he reviewed her deposition and noted that after the fall she immediately complained of pain in her eye and exhibited symptoms consistent with a tributary BRVO; he personally examined her and ran tests that showed the retinal swelling had gotten worse; and, most importantly, he watched the video that showed her falling rapidly and hitting the ground with the left side of her face, which arguably could be better evidence than Ms. Conerly's own recollection. These are the types of records, documents and materials commonly relied on by medical experts.

Hobby Lobby is asking the Court to assign significance to Dr. Jiménez's "lack of factual knowledge" based on unestablished supposition of what is required for a tributary BRVO to occur. The record is not clear—could hitting one's eye with significant force be enough? Would only compressing the abdominal area be

enough? Without knowing exactly what is required, it is further unclear whether Ms. Conerly performing a "Valsalva maneuver" is even necessary. Similarly, as for Dr. Jiménez's not knowing what delta-v force occurred presupposes that there must be a specific delta-v force experienced before a tributary BRVO can occur. Given the state of the record, the Court finds that these are issues to be addressed on cross-examination.

Given Dr. Jiménez's qualifications as a board-certified ophthalmology surgeon and full-time vitreoretinal surgeon, the Court finds that his specialized knowledge will help the trier of fact to understand the evidence and/or determine a fact in issue. *See* Fed. R. Evid. 702. Therefore, the Court denies this portion of Hobby Lobby's [69] Motion. Dr. Jiménez may offer testimony on his BRVO diagnosis and what caused it.

## B. Future Treatment Opinion

At the August 2025 deposition Dr. Jiménez testified that Ms. Conerly would require no further treatment for the BRVO. [72-3] 94:19-25. On October 1, 2025, however, Dr. Jiménez sent a letter to Plaintiffs' life care planner, Elizabeth Martina, wherein he expressed that Ms. Conerly would require injections in her left eye every two months for the next two years, and beyond that, she would require annual visits to a retina specialist every year for the remainder of her life. Jiménez Letter [72-7].[6] Due to this change of opinion, Dr. Jiménez was deposed again on

---

[6] The October 1, 2025, letter did nothing to change Dr. Jiménez's opinion on causation.

December 5, 2025. It was then that Dr. Jiménez testified that he now believed a six-month interval was more appropriate than the two months stated in his letter to Ms. Martina. [68] at 6 (citing [72-4] 35:5-15). Hobby Lobby seeks to exclude any opinion regarding future treatment on the grounds that it is too speculative.

Dr. Jiménez is one of Ms. Conerly's treating physicians. He has testified about the healing process of a tributary BRVO—that it must be monitored and that treatment for swelling is provided when needed. [72-3] 66:6-12. With BRVO treatment, "you stretch it out as much as you can, but it's very frequent to have relapses." [72-4] 35:24-36:1. He treated Ms. Conerly on a regular basis throughout 2025. His ongoing evaluations provided him with additional clinical observations and data to refine his opinions. For instance, at the time of his August 22, 2025 deposition, Ms. Conerly had not needed a treatment injection since February 17, 2025; thus, his opinion that Ms. Conerly would no longer need injections was based on his working knowledge at the time. *Id.* 101:20-102:2 But when Dr. Jiménez saw Ms. Conerly five days later on August 27, 2025, and performed an OCT of her left eye, her swelling had worsened, and she received another injection. [72-1] at 16-20; [72-4] 27:11-29:7. During her October 2, 2025, visit, Ms. Conerly's swelling had improved, and she did not receive an injection. [72-1] at 9-12; [72-4] 29:10-30:5.

In his December 2025 deposition, Dr. Jiménez testified that the need for injections every two months for the next two years, as stated in the October 1 letter, was "just an estimate" because he cannot "predict the future," and he "might have overestimated it." [72-4] 15:1-9. In the final analysis, however, it will be up to the

10

jury to weigh the testimony and to determine whether future treatment is needed, and if so, how frequently. Therefore, the Court finds Dr. Jiménez's opinion as a treating physician regarding future medical treatment is admissible and denies this portion of Hobby Lobby's [69] Motion.

## CONCLUSION

The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. The Court in *Daubert* makes clear that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798.

Based on the foregoing, the Court finds that Dr. Jaime Jiménez's opinions regarding causation and future treatment are admissible. The jury will consider the testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendant's Motion to Exclude or Limit Testimony of Dr. Jaime Jiménez [69] is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 20th day of March, 2026.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE